5:21−cv−00845 (BKS/TWD)

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONONDAGA

_____

ALISON BEAUCHINE,

               Plaintiff,

     -against-

CITY OF SYRACUSE, NEW YORK;  POLICE CHIEF
KENTON BUCKNER; DEPUTY CHIEF RICHARD SHOFF;
DEPUTY CHIEF DEREK McGORK; DEPUTY CHIEF
JOSEPH CECILE; DEPUTY CHIEF RICHARD
TRUDELL; MICHCA BALLARD-FORTIN; and JOHN
DOE(S) and/or JANE DOE(S), in their individual and
official capacities as officials, officers, agents, employees,
and/or representatives of the CITY OF SYRACUSE
and/or the SYRACUSE POLICE DEPARTMENT,

               Defendants.

_____

**SUMMONS**

Plaintiff designates
Onondaga County as the
place of trial.

TO THE ABOVE NAMED DEFENDANTS:

       YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a

copy of your answer or, if the Complaint is not served with this Summons, to serve a Notice of

Appearance on Plaintiff's attorney within twenty (20) days after service of this Summons, exclusive

of the day of service, or within thirty (30) days after service is complete if this Summons is not

personally delivered to you within the State of New York.  In case of your failure to appear or

answer, judgment will be taken against you by default for the relief demanded below.

       Venue is based on CPLR § 504(2).

Dated: June 28, 2021

A.J. Bosman, Esq.
Robert Strum, Esq.
Bosman Law, L.L.C.
*Attorneys for Plaintiff*
Office and Post Office Address:
3000 McConnellsville Road
Blossvale, New York 13308
Telephone: (315) 820-4417

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ONONDAGA

_____

ALISON BEAUCHINE,

                              Plaintiff,                    **COMPLAINT**

          -against-                                          Jury Trial Demanded

CITY OF SYRACUSE, NEW YORK;  POLICE CHIEF
KENTON BUCKNER; DEPUTY CHIEF RICHARD SHOFF;
DEPUTY CHIEF DEREK McGORK; DEPUTY CHIEF
JOSEPH CECILE; DEPUTY CHIEF RICHARD
TRUDELL; MICHCA BALLARD-FORTIN; and JOHN
DOE(S) and/or JANE DOE(S), in their individual and
official capacities as officials, officers, agents, employees,
and/or representatives of the CITY OF SYRACUSE
and/or the SYRACUSE POLICE DEPARTMENT,

                              Defendants.

_____

          Plaintiff ALISON BEAUCHINE, by and through her attorneys, Bosman Law, L.L.C., as

and for a Complaint against Defendants, CITY OF SYRACUSE, NEW YORK; SYRACUSE

POLICE DEPARTMENT; POLICE CHIEF KENTON BUCKNER; DEPUTY CHIEF

RICHARD SHOFF; DEPUTY CHIEF DEREK McGORK; DEPUTY CHIEF JOSEPH CECILE;

DEPUTY CHIEF RICHARD TRUDELL; MICHCA BALLARD-FORTIN; and JOHN DOE(S)

and/or JANE DOE(S), in their individual and official capacities as officials, officers, agents,

employees, and/or representatives of the CITY OF SYRACUSE and/or the SYRACUSE

POLICE DEPARTMENT, alleges as follows:

## PRELIMINARY STATEMENT

          1.  This is an action under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

("ADA"), the Rehabilitation Act, 29 U.S.C. § 793(c) ("Rehabilitation Act");  42 U.S.C. § 1983

-1-

NYSCEF DOC. NO.     RECEIVED NYSCEF: 06/28/2021

based on rights under the First and Fourteenth Amendments to the United States Constitution as well as 42 U.S.C. § 1981; the New York Human Rights Law, Exec. Law § 296, *et seq*. ("Human Rights Law"); and New York State common law.

## JURISDICTION

2. Jurisdiction is conferred upon this Court pursuant to the Constitution and laws of the State of New York and the United States of America.

## VENUE

3. Venue is proper in Onondaga County pursuant to CPLR 504(2).

## PARTIES

4. Plaintiff, Alison Beauchine, at all times relevant to this Complaint, is a female citizen of the United States and a resident of the County of Onondaga and State of New York. She was at all times relevant herein an employee of the City of Syracuse and the Syracuse Police Department since May 2006.

5. Defendant, City of Syracuse is a municipal corporation organized and existing under the laws of the State of New York and at all relevant times had its principal place of business at City Hall, 233 E. Washington Street, Syracuse, New York.

6. Defendant, City of Syracuse Police Department is part of the municipal corporation of the City of Syracuse, organized and existing under the laws of the State of New York and at all relevant times had its principal place of business at 511 South State Street, Syracuse, New York.

7. At all times relevant hereto, Defendants City of Syracuse and Syracuse Police Department employed the hereinafter named individuals and the Plaintiff herein. The said City of Syracuse and the City of Syracuse Police Department is by law responsible for the wrongdoing of

officers and employees of the City of Syracuse Police Department and by law responsible for the direct participation and endorsement of the unconstitutional and unlawful customs, policies and practices at issue herein. These Defendants were also aware, through their officers, legislators, and agents, of these unlawful customs, policies and practices, and deliberately and/or negligently failed to take action to correct the unlawful customs, policies, and practices.

8.  At all times relevant hereto, Defendant, Kenton Buckner, at all times relevant to this Complaint is the duly appointed Chief of Police of the Syracuse Police Department and a policymaking official within the City of Syracuse, carrying out the directives and enforcing and enacting policies and acts, both as recommended by him and as endorsed by the Syracuse Police Department and Defendant City.  He is responsible, among other things, for training, supervision, discipline, and conduct of these other named Defendants.  He is also responsible, by law, for enforcing the rules and regulations of the State of New York and City of Syracuse for insuring that employees of the Syracuse Police Department obey the laws of the State of New York and the United States.

9.  Defendant, Richard Shoff, at all times relevant to this Complaint, was a duly appointed Deputy Chief for the Syracuse Police Department.  As a supervisor, he had the power to make personnel decisions regarding Plaintiff's employment.  He is responsible, among other things, for training, supervision, discipline, and conduct of these other named Defendants.  He is also responsible, by law, for enforcing the rules and regulations of the State of New York and City of Syracuse for insuring that employees of the Syracuse Police Department obey the laws of the State of New York and the United States.

10.  Defendants, Derek McGork, Joseph Cecile, and Richard Trudell, at all times relevant

to this Complaint, are duly appointed Deputy Chiefs of the Syracuse Police Department.  They

were on notice on notice of the discriminatory and retaliatory treatment towards Plaintiff and

failed to take any corrective or remedial action.  They are responsible, among other things, for

training, supervision, discipline, and conduct of these other named Defendants.  They are also

responsible, by law, for enforcing the rules and regulations of the State of New York and City of

Syracuse for insuring that employees of the Syracuse Police Department obey the laws of the

State of New York and the United States.

11.  Defendant, Michca Ballard-Fortin, at all times relevant to this Complaint, is the duly

appointed Administrative Director of the Syracuse Police Department's Human Resources

Division.  She is responsible for administering benefits under New York General Municipal Law

§ 207-c.

12.  Defendants John Does and Jane Does are individuals not yet known to the Plaintiff.

Once their identities are ascertained, the names of those individuals will be substituted in place of

the John Does and Jane Does designation(s).

13.  All of the above-named Defendants are responsible for the establishment and

perpetuation of a hostile work environment and discriminatory and retaliatory policies, customs,

practices and habits complained of herein and also aided and abetted the unlawful conduct

described herein. Defendants all are equally responsible and legally accountable for the unlawful

conduct of each other for their actions and/or failing to intercede and prevent the unlawful,

hostile, discriminatory and retaliatory conduct.

14.  During all times mentioned in this Complaint, Defendants were acting within the

scope of their employment and under color of law, namely, under color of the Constitution,

statutes, laws, charters, ordinances, rules, regulations, customs, and usages of the State of New York and the City of Syracuse in the State of New York.

## CONDITIONS PRECEDENT

15.  On or about January 15, 2021, a verified Notice of Claim was duly and timely served on Defendants.  At least 30 days has elapsed since service of such Notice of Claim and payment thereof has been refused.

16.  On or about March 1, 2021, Plaintiff filed a complaint of discrimination and retaliation with the New York State Division of Human Rights.  Plaintiff's complaint was cross filed with the U.S. Equal Employment Opportunity Commission (EEOC) pursuant to a work-share agreement between the two agencies.

17.  On or about April 21, 2021, the Division of Human Rights issued an Order of Dismissal for Administrative Convenience.

18.  On or about June 7, 2021, the Department of Justice issued Plaintiff a Right to Sue letter.

## FACTS

19.  This Complaint is in all respects based upon past and continuing and ongoing harm and injury caused by Defendants in their discriminatory acts and policies.  Such acts and policies were illegally imposed on Plaintiff by Defendants employing and endorsing a policy which excludes women from certain assignments, positions of visibility, authority, and power, and denying women assignments or transfers which lead to supervisory and management opportunities.  Denying women access to these assignments leads to lower pay and fewer benefits.

20. Defendants have subjected women to discriminatory and disparate treatment in that complaints and statements by men are taken as more reliable and believable than those by women. Additionally, Defendants do not treat hostile and discriminatory acts against women in the department seriously.

21. Plaintiff holds the position of police officer for the Defendant City of Syracuse Police Department.  Plaintiff is a female and disabled and, as such, a member of protected classes.

22.    Plaintiff is a civil service employee and a member of the Union and employees as such are protected by the contract in effect entered into by the City of Syracuse with its employees.  Such contract provides for the fair and equal treatment in matters of pay and terms of employment including discipline and sanctions for misconduct of employees without regard to gender, race, age, or other classification.  In her position as police officer, Plaintiff always performed her duties in a fully competent and professional manner and received positive evaluations during her employment.  In point of fact, Plaintiff's most recent performance evaluation (2020) expresses that she "possess[es] the work ethic, qualities, and characteristics to be a good supervisor."

23. Plaintiff was injured in the performance of her police officer duties with Defendants. She suffers from Post Traumatic Stress Disorder (PTSD) related to several on-duty incidents. Said condition is a qualifying disability under the ADA and the Human Rights Law.

24. After Plaintiff's diagnosis of PTSD, her doctor took her out of work in February 2016. She applied for benefits under § 207-c, but Defendants failed to timely render a decision on Complaintant's application. While Plaintiff requested to return to work performing light duty

tasks on March 23, 2016, Defendants refused to allow Plaintiff to return to work until she was

deemed fit for duty by their preferred doctor. During Plaintiff's treatment for her condition, she

was forced to exhaust her time off and enter a "sick bank."

25.  Defendants' conduct violated Plaintiff's right to receive § 207-c benefits under the

law. Further, Defendants have discriminated against Plaintiff on the basis of her gender and

disability. Defendants repeatedly denied Plaintiff promotions, benefits, and other opportunities

that were provided to similarly situated, but less qualified, male employees and employees that

do not have PTSD.

26.  Plaintiff's PTSD developed and worsened as a result of her police officer duties,

where she is repeatedly subjected to traumatic events. One example of such an event is an August

2015 call where a babysitter threw a two-year old child down the stairs. When Plaintiff

responded to the call, she witnessed the extent of the child's severe injuries.

27.  After Plaintiff requested, on March 23, 2016, to return to work with light duty

accommodations, Defendants told her that she would not be allowed light duty work because her

injury was not on-duty. The Department further notified her that it would not allow her to return

to work until she was seen by its doctor and deemed fit for duty. This examination took place in

late August 2016 with Dr. Cross. Upon completion of her examination by this doctor, he told

Plaintiff that the injury was "of course" an on-duty injury. However, Defendants subsequently

claimed that Dr. Cross was not qualified to make such a determination.

28.  Prior to Plaintiff's return to work on September 1, 2016, she became pregnant and

notified a supervisor, Sergeant Deegan. Because of her pregnancy, she was given desk work.

Deegan later told Plaintiff that Chief Thompson ordered her to write a 10.1 disciplinary

memorandum about why she was pregnant and on desk work. It is standard policy and practice at the Syracuse Police Department to allow pregnant officers non-patrol work without requiring the officer to complete such a memorandum.

29.   Subsequently, Defendants required Plaintiff to be examined by a second doctor, Dr. Fayer, in New York City. Plaintiff attended an examination with this doctor in December 2016. During the examination, Dr. Fayer acted in a peculiar manner; he took a long phone call and, at one point stopped to feed birds. After completing the examination, Fayer told Plaintiff that it was not his job to determine if her PTSD was caused by on-duty experiences. However, Fayer later generated a report with numerous inaccuracies in which he asserted that Plaintiff did not have PTSD and that, if she did, it was caused by childhood trauma—not her experiences as a police officer. This determination directly contradicted the determinations of Plaintiff's own doctors and Dr. Cross, who she was required to see at Defendants' direction. Plaintiff discussed the inaccuracies in the report with then-Chief Fowler and Deputy Chief Cecile in an early 2017 meeting. Even after this second examination, Defendants did not provide Plaintiff with a determination on her application for § 207-c benefits.

30.   In July 2017, Plaintiff returned to full patrol duties. In this position she trained a new recruit as a Field Training Officer. She experienced another traumatic event in November 2017 when her police cruiser was intentionally hit by a tow truck during a pursuit that escalated into a shots-fired incident. This incident contributed to Plaintiff's depression and, in early 2018, she accepted a non-patrol position in the Records Division being vacated by a retiring officer. After several months of training, Plaintiff took over the position in June 2018.

31.   Plaintiff took the Civil Service test required to become a Sergeant in 2019. In order

to familiarize herself with recent changes to the law and better prepare herself to perform the

duties of Sergeant, Plaintiff requested to be scheduled for a day on patrol. In response to this

request, Defendant Deputy Chief Shoff told her that she would need to transfer back to patrol

full-time if she wanted to be promoted. Male officers and/or officers without Plaintiff's

disabilities were not required or told to transfer to patrol before being considered for promotion.

After verbally agreeing to Plaintiff's request, Defendant Shoff later emailed a response denying

the shift assignment. Shoff had previously commented about Plaintiff that she "can't go back to

the road" despite having been deemed fit to do so in 2016 and working patrol on multiple

occasions since that determination.

32.  In June 2020, Plaintiff was interviewed for the sergeant's position.  At all times

relevant hereto, she was qualified to hold the sergeant's position.  Additionally, her performance

has been above average as demonstrated by her performance evaluations and she has no

disciplinary history.

33.  At the end of August 2020, Defendants promoted Carlos Romain, a man, to Sergeant

instead of Plaintiff. Romain had a lower score on the test and, unlike Plaintiff, had no Field

Training Officer experience. Further, Officer Romain had been removed from road patrol in the

past in response to multiple reports of unsafe and unlawful behavior, including a 2016 incident

where he fired at a vehicle without proper justification. Subsequently, in October 2020, five other

male officers (Kevin Amidon, Dallas Pelz, Seth Baker, Matthew Liadka and Jason Springer) with

lower test scores and less seniority and experience were promoted instead of Plaintiff. When she

pressed Defendant Shoff for an explanation, he told her it was because of her conversation with

the Chief. The referenced conversation occurred in 2018 when Plaintiff went to Defendant Chief

-9-

Buckner with paperwork she needed him to sign. Buckner questioned her about why a police officer was doing administrative work, insinuating that such tasks should be done by civilians. Plaintiff explained that she took the position in the Records Division due to her PTSD and depression. During the same conversation, Plaintiff reported to Buckner that she had still not received a determination on her application for § 207-c benefits.

34. After one of the promotion denials, Defendant Shoff told Plaintiff that she needed a "time-line," indicating that she had not worked enough patrol shifts to be promoted. The male officers promoted ahead of her were not required to create or follow a time-line before promotion and, in fact, some of them were not promoted from patrol. Shoff has expressed a stereotypical bias against female officers. For example, in early 2020 he expressed his opinion, with regards to a female police academy recruit, that she was "too girly" to succeed as a police officer.

35. On October 15, 2020, Plaintiff emailed Defendants Buckner, Shoff, McGork, Cecile, and Trudell to ask why she was repeatedly passed over for promotions in favor of less qualified candidates and complain that she felt it was related to her PTSD. With respect to the § 207-c application, Plaintiff requested her sick time, furlough days, and personal days returned. Further, Plaintiff expressed her belief that the Department's treatment of its officers was having a detrimental effect on morale.

36. Jeffrey Piedmonte, Plaintiff's union representative, emailed Chief Buckner and others on November 25, 2020 to inquire about the determination on her § 207-c application. Buckner responded, acknowledging that she had not yet received an "official designation" and advising that he expected to be able to provide an update in the near future. In response to another email from Piedmonte on December 2, 2020, Buckner stated that he would follow up

-10-

after meeting with attorneys.

37.  Buckner, in a December 7, 2020 email to Piedmonte, first notified Plaintiff of the Department's determination on her February 2016 application for § 207-c benefits. He stated that a review of files has revealed that her claim was denied, but was unable to provide a copy of the denial letter. Plaintiff, on December 9, 2020, notified Buckner that she was appealing the decision that she is not entitled to the benefits. In a meeting that day, Defendant Buckner threatened Plaintiff with discipline for her October 15 and December 9 emails requesting assistance and complaining of discriminatory treatment. He ordered her to "knock that kind of stuff off" and "keep it to yourself." She was not permitted to have a union representative present. Buckner continued, questioning if Plaintiff was "trying to get promoted writing this kind of stuff." Plaintiff expressed that she felt Buckner was retaliating against her and instead of considering her complaint seriously, he replied "call it whatever you want to call it."

38.  Both Plaintiff and Piedmonte requested documentation the Department relied on in reaching their decision. Piedmonte followed up on this document request on December 16, noting his concern that further delays in production could jeopardize Plaintiff's right to appeal. In response, Buckner relayed his belief that the time for appeal had "long passed" despite the fact that Plaintiff had first learned of the denial earlier that month and had been repeatedly told that a decision had not yet been reached. In a memorandum to the Chief and Human Resources Division the same day, Plaintiff put her argument on appeal in writing and attached the supporting documentation she had in her possession, including Dr. Cross' report, Dr. Fayer's report, and information from the National Institute of Mental Health regarding PTSD symptoms. Upon information and belief, Defendants treat mental or psychological conditions as less

injurious than physical ones.  Such discrimination against mental or psychological injuries is unlawful.

39.  Defendants entered into a Consent Order to correct discriminatory policies against women and minorities in or around 1980 in the matters of *Alexander v. Bahou*, Civ. No. 78-CV-392 and *United States v. City of Syracuse*, Civ. No. 80-CV-53. Defendants failed to implement and recklessly disregarded the Consent Order, perpetuating a discriminatory environment in the Syracuse Police Department.

40.  In point of fact, Defendants have a long and tortured history with respect to their treatment of minority employees and they have not honored either the letter or spirit of the Consent Decree.  Defendants routinely subject women and other minorities to stricter scrutiny and application of rules or guidelines in the use of sick time, workplace injury, performance, promotions and assignments, and on the job and off the job conduct.  Defendants unfairly and routinely endorse and believe the word of White male employees over that of female and other minority employees.  Additionally, women and other minorities are subjected to retaliation for complaining about discrimination.  Despite having ample notice of these patterns and practices of behavior which are notoriously sexist, retaliatory and discriminatory, Defendants failed to put sufficient or appropriate resources to adequately monitor or address these issues to insure that such treatment and discriminatory conduct is eliminated.

41.  In October 2020, the City resisted an attempt by the U.S. Department of Justice (DOJ) to dissolve the 1980 Consent Decree.

42.  A chart prepared by the City's attorney shows a breakdown of officers, sergeants, lieutenants, captains, and chiefs and indicates both the number and percentage of officers who are

African-American and women. It also identifies a "target" percentage - one that matches their percentage of the population in the community at large. The chart reflects one African-American sergeant and three female sergeants as of June 2020 (there being a total of 52 sergeants). According to the chart, the "target" for African-American sergeants is 27.9% (then current actual total was 1.92%) and women 52.8% (then current actual total was 5.77%). Chief Buckner stated, in a sworn declaration in opposition to the DOJ's motion, that he has applied a "minority hiring preference" in the Police Department.

43. In January 2021, the U.S. District Court, Northern District of New York modified the Consent Decree such that the City may no longer rely on it as a defense for applying differing Civil Service cutoff scores on the basis of race or gender but otherwise kept it intact. The City did not appeal.

44. On or about February 18, 2021, Defendants promoted a Black female officer (Christina Garwood) who scored lower on the Civil Service test than Plaintiff and had 10 fewer years time and experience than her. Upon information and belief, this officer does not suffer from a disability. This was the first promotion made following the attempt to dissolve the Consent Decree. By promoting this officer, the City obtained an increase in both minority categories that they could not obtain by hiring either an African-American man or a White woman. Upon information and belief, race and/or disability was an impermissible factor in the decision to promote this officer instead of Plaintiff. Additionally, Plaintiff was not afforded an equal "hiring preference" that was afforded to this Black female officer as numerous White male officers who scored above Plaintiff were promoted instead of her. In fact, numerous White male officers with lower test scores and less seniority were promoted over her. Giving preference to

-13-

one disadvantaged group over another - while maintaining a preference for White male candidates - does nothing to address or remediate the systemic discrimination against women and minorities in the Department and is unlawful.

45. Alternatively, said employment decision was the product of retaliation against Plaintiff because of her opposition to disability-based and gender discrimination and retaliation. The Police Department has a custom or policy of retaliating against officers who complain or report discrimination. *See Lee v. City of Syracuse, et al.*, U.S. Dist. Ct., N.D.N.Y., Civil Action Nos. 5:03-CV-1329 and 5:06-CV-949. In *Lee*, a jury determined after trial that the Syracuse Police Department has a policy or custom of retaliating against employees who complain of discrimination. That determination was upheld by the U.S. Court of Appeals for the Second Circuit. See *Lee v. City of Syracuse*, 446 Fed. Appx. 319 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 2113 (2012).

46. Approximately one month prior said promotion, Plaintiff served a Notice of Claim on the City complaining about discrimination based on disability and gender (January 15, 2021). Upon information and belief, Plaintiff was subjected to said unlawful custom or policy of retaliation relative to her employment, including her non-selection for promotion.

47. On or about March 1, 2021, Plaintiff filed a complaint of discrimination on the basis of disability with the New York State Division of Human Rights (Division). She subsequently requested administrative convenience dismissal on the basis that she intends to bring a lawsuit. The Division dismissed her complaint on April 21, 2021. The Equal Employment Opportunity Commission issued a Right to Sue letter on June 7, 2021.

48. On June 22, 2021, the Defendants yet again passed Plaintiff over for promotion.

-14-

Three White male officers (Daniel Rathbun, Christopher Gaj and Dustin Kiellach) were promoted instead of Plaintiff. Upon information and belief, Plaintiff's disability, gender, race and protected activities were impermissible factors in said employment decisions.

49.  As a result of Defendants' unlawful actions and omissions, Plaintiff has been financially and personally harmed, subjected to severe emotional distress for which she has sought and received medical treatment, humiliation, indignity, shame, damage to her good name, and physical manifestations of said harm; all harms substantially and proximately caused by the acts and omissions of Defendants as set forth herein. Defendants have injured Plaintiff and she is entitled to compensation therefor.

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR DISABILITY DISCRIMINATION
### UNDER THE ADA AGAINST DEFENDANT CITY

50.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 49 above.

51.  At all times relevant hereto, Plaintiff was a qualified individual with a disability under the ADA. Plaintiff's diagnosis of PTSD constitutes a disability under the ADA. Defendant City of Syracuse is an "employer" under the ADA and is liable as such. The actions and omissions of Defendant City constitute a violation of Plaintiff's rights under the ADA by treating mental or psychological conditions as less injurious than physical ones and by making employment decisions based on such conditions.

52.  As a direct and proximate result of Defendant City's wrongful acts and omissions, Plaintiff has sustained injury and harm and is entitled to compensation therefor.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR DISABILITY DISCRIMINATION
## UNDER THE REHABILITATION ACT
## AGAINST DEFENDANT CITY

53. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 52 above.

54. At all times relevant hereto, Plaintiff was a qualified individual with a disability under the Rehabilitation Act. Plaintiff's diagnosis of PTSD constitutes a disability under the Rehabilitation Act. Defendant City of Syracuse is a covered entity under the Rehabilitation as it is a recipient of Federal financial assistance. The actions and omissions of Defendant City constitute a violation of Plaintiff's rights under the Rehabilitation Act.

55. As a direct and proximate result of Defendant City's wrongful acts and omissions, Plaintiff has sustained injury and harm and is entitled to compensation therefor.

## AS AND FOR A THIRD CAUSE OF ACTION FOR
## DISABILITY DISCRIMINATION UNDER THE
## HUMAN RIGHTS LAW AGAINST ALL DEFENDANTS

56. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 55 above.

57. At all times relevant hereto, Plaintiff was a qualified individual with a disability under the Human Rights Law. Plaintiff's diagnosis of PTSD constitutes a disability under the Human Rights Law. Defendant City of Syracuse is an "employer" under the Human Rights Law and is liable as such. The individual Defendants are considered "employers" under the Human Rights Law based on their respective high-ranking positions in the Department. Alternatively, said Defendants are "aiders and abettors" pursuant to N.Y. Exec. Law § 296(6). The actions and omissions of Defendant City constitute a violation of Plaintiff's rights to be free from disability

-16-

discrimination under the Human Rights Law.

58.  As a direct and proximate result of Defendant's wrongful acts and omissions,

Plaintiff has sustained injury and harm and is entitled to compensation therefor.

### AS AND FOR A FOURTH CAUSE OF ACTION
### FOR GENDER DISCRIMINATION UNDER THE
### FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983
### AGAINST ALL DEFENDANTS EXCEPT BALLARD-FORTIN

59.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 58 above.

60.  Defendants violated rights guaranteed to Plaintiff under the Equal Protection Clause

of the Fourteenth Amendment to the United States Constitution in that she was subjected to

discrimination based on gender.

61.  As a direct and proximate result of Defendant's wrongful acts and omissions,

Plaintiff has sustained injury and harm and is entitled to compensation therefor.

### AS AND FOR A FIFTH CAUSE OF ACTION
### FOR GENDER DISCRIMINATION UNDER THE HUMAN RIGHTS LAW
### AGAINST ALL DEFENDANTS EXCEPT BALLARD-FORTIN

62.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 61 above.

63.  Defendants violated rights guaranteed to Plaintiff under the Human Rights Law in

that she was subjected to discrimination in matters relating to her employment based on gender.

64.  As a direct and proximate result of Defendant's wrongful acts and omissions,

Plaintiff has sustained injury and harm and is entitled to compensation therefor.

### AS AND FOR A SIXTH CAUSE OF ACTION
### FOR RACE DISCRIMINATION UNDER THE FOURTEENTH AMENDMENT
### PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS

-17-

**EXCEPT BALLARD-FORTIN**

65. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 64 above.

66. Defendants violated rights guaranteed to Plaintiff under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in that she was subjected to discrimination because of race.

67. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained injury and harm and is entitled to compensation therefor.

**AS AND FOR A SEVENTH CAUSE OF ACTION FOR RACE DISCRIMINATION UNDER 42 U.S.C. § 1981 PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS EXCEPT BALLARD-FORTIN**

68. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 67 above.

69. Defendants violated rights guaranteed to Plaintiff under 42 U.S.C. § 1981 in that she was subjected to discrimination based on race.

70. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained injury and harm and is entitled to compensation therefor.

**AS AND FOR AN EIGHTH CAUSE OF ACTION FOR RACE DISCRIMINATION UNDER THE HUMAN RIGHTS LAW AGAINST ALL DEFENDANTS EXCEPT BALLARD-FORTIN**

71. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 70 above.

72. Defendants violated rights guaranteed to Plaintiff under the Human Rights Law in that she was subjected to discrimination in matters relating to her employment based on race.

-18-

73.  As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained injury and harm and is entitled to compensation therefor.

**AS AND FOR A NINTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE ADA**
**AGAINST DEFENDANT CITY**

74.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 73 above.

75.  Defendant employer violated rights guaranteed to the Plaintiff under the ADA in that Plaintiff was retaliated against for opposing disability-based discrimination and participating in ADA administrative complaint processes.

76.  Plaintiff sustained damages by reason of the Defendant's wrongful actions and omissions and is entitled to compensation therefor.

**AS AND FOR A TENTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE REHABILITATION ACT**
**AGAINST DEFENDANT CITY**

77.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 76 above.

78.  Defendant employer violated rights guaranteed to the Plaintiff under the Rehabilitation Act in that Plaintiff was retaliated against for opposing disability-based discrimination and participating in ADA administrative complaint processes.

79.  Plaintiff sustained damages by reason of the Defendant's wrongful actions and omissions and is entitled to compensation therefor.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE HUMAN RIGHTS LAW**
**AGAINST BALLARD-FORTIN**

-19-

80. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 79 above.

81. Defendant employer violated rights guaranteed to the Plaintiff under the Human Rights Law in that Plaintiff was retaliated against for opposing disability-based and gender-based discrimination and retaliation and participating in Human Rights Law administrative complaint processes.

82. Plaintiff sustained damages by reason of the Defendant's wrongful actions and omissions and is entitled to compensation therefor.

### AS AND FOR A TWELFTH CAUSE OF ACTION FOR RETALIATION UNDER THE FIRST AMENDMENT PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS EXCEPT BALLARD-FORTIN

83. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 82 above.

84. Defendants violated rights guaranteed to the Plaintiff under the First Amendment to the United States Constitution in that Plaintiff was retaliated against for opposing gender discrimination in public employment and expression on matters of public concern.

85. Plaintiff sustained damages by reason of the Defendants' wrongful actions and omissions and is entitled to compensation therefor.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION FOR RETALIATION UNDER THE FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS EXCEPT BALLARD-FORTIN

86. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 85 above.

87. Defendants violated rights guaranteed to Plaintiff under the Equal Protection Clause

of the Fourteenth Amendment to the United States Constitution in that she was subjected to retaliation based on her opposition to gender discrimination and retaliation.

88.  Plaintiff sustained damages by reason of the Defendants' wrongful actions and omissions and is entitled to compensation therefor.

### AS AND FOR A FOURTEENTH CAUSE OF ACTION
### FOR TORTIOUS INTERFERENCE AGAINST
### ALL DEFENDANTS EXCEPT THE CITY

89.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 88 above.

90.  By their aforementioned actions and omissions, Defendants intentionally interfered with Plaintiff's employment with the City of Syracuse and the Collective Bargaining Agreement between Defendant City and the City of Syracuse Police Benevolent Association, to which she is a third-party beneficiary.

91.  Plaintiff sustained damages by reason of the Defendants' wrongful actions and omissions and is entitled to compensation therefor.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION
### FOR PRIMA FACIE TORT AGAINST ALL DEFENDANTS

92.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 91 with the same force and effect as if set forth fully herein.

93.  Defendants intended to inflict harm upon the pecuniary interests of the Plaintiff by engaging in the aforementioned actions and omissions.

94.  Defendants had no legal justification or excuse to act in such manner and their actions and/or omissions were unlawful.

95.  The aforesaid acts and/or omissions of Defendants were intended to cause harm and

injury to Plaintiff and, as a result, Plaintiff has suffered damages in the form of loss of wages and benefits, and is entitled to recover for those injuries and damages as previously set forth herein.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION
## FOR INTENTIONAL AND/OR RECKLESS INFLICTION
## OF EMOTIONAL DISTRESS AGAINST
## ALL DEFENDANTS EXCEPT THE CITY

96. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 95 above.

97. Defendants engaged in extreme and outrageous conduct as demonstrated by their actions set forth above.

98. Upon information and belief, Defendants intended to cause Plaintiff severe emotional distress. Alternatively, Defendants disregarded a substantial probability that their conduct would cause severe emotional distress.

99. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress for which she has sought and received medical treatment and is entitled to compensation therefor.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION
## FOR NEGLIGENCE AGAINST ALL DEFENDANTS

100. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 99 above.

101. Defendants owe a duty to Plaintiff to act with care and not subject her to harm or risk thereof.

102. Defendants have and maintain a special relationship with Plaintiff that requires them to act with care and not subject her to harm or risk thereof.

-22-

103. Defendants have acted with gross and/or ordinary negligence and reckless disregard to Plaintiff's rights to fair, timely and equal consideration of her application for benefits under 207-c.

104. Plaintiff sustained damages by reason of the Defendants' wrongful actions and omissions and is entitled to compensation therefor.

**WHEREFORE**, Plaintiff seeks judgment against Defendants, jointly and severally, as follows:

a. an Order enjoining the Defendants from further violating Plaintiff's rights and providing the following injunctive relief:

1. Order Defendants to elevate Plaintiff to the Sergeant's position and reimburse her for lost pay and benefits;

2. Require the Defendants to review and correct all unconstitutional and discriminatory treatment and conduct within the Syracuse Police Department;

3. Provide equal training, opportunities, terms, benefits, and pay to female employees in the Syracuse Police Department;

4. Mandate training and educational programs for employees about discrimination and retaliation; and

5. Require annual reports demonstrating efforts and success at compliance in providing a discrimination and retaliation-free workplace.

b. an Order enjoining the Defendants from further violating Plaintiff's rights;

c. compensatory damages in an amount to be determined at trial (said amount exceeding the jurisdiction of all lower courts);

-23-

      d.  punitive damages as against the individuals in an amount to be determined at trial (said amount exceeding the jurisdiction of all lower courts);

      e.  attorneys' fees, costs and disbursements of this action;

      f.  declaratory relief finding that each Defendant violated Plaintiff's rights; and

      g.  such other and further relief the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: June 28, 2021

A.J. Bosman, Esq.
Robert Strum, Esq.
Bosman Law, L.L.C.
*Attorneys for Plaintiff*
Office and Post Office Address:
3000 McConnellsville Road
Blossvale, New York 13308
Telephone: (315) 820-4417